1

2

3

4

5

6

7

8

9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

10

11

12

13

14

15

LARRY M. JOHNSON,

            Plaintiff,

    v.

MICHAEL J. ASTRUE, Commissioner
of the Social Security Administration,

            Defendant.

CASE NO. 10cv5906-RBL-JRC

REPORT AND
RECOMMENDATION ON
PLAINTIFF'S COMPLAINT

NOTED FOR: February 17, 2012

16

17

18

19

20

        This matter has been referred to United States Magistrate Judge J. Richard

Creatura pursuant to 28 U.S.C. § 636(b)(1) and Local Magistrate Judge Rule MJR

4(a)(4), and as authorized by Mathews, Secretary of H.E.W. v. Weber, 423 U.S. 261,

271-72 (1976).  This matter has been fully briefed. (See ECF Nos. 15, 20, 23).

21

22

23

24

        The ALJ erred in his evaluation of the medical and other evidence, in part, by

failing to discuss significant probative evidence. The ALJ found that plaintiff experienced

recovery following his knee surgery without discussing plaintiff's recent MRI results,

which revealed a small disc protrusion that resulted in noted limitations in plaintiff's residual functioning, as opined by other medical source PA-C Myers. The ALJ also erred in his evaluation of the lay evidence and plaintiff's credibility. For these reasons and based on the relevant record, the Court concludes that this matter should be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) to the Commissioner for further administrative proceedings.

BACKGROUND

Plaintiff, LARRY M. JOHNSON, was born in 1985, on his alleged onset date of disability (Tr. 111). He was twenty-one years old when he filed his Social Security application for benefits (id.). Plaintiff graduated from high school, where he was in special education (see Tr. 26). At his October, 2009 hearing, plaintiff testified that he had been living alone for about a year, although he also testified that he was homeless (Tr. 25, 26). Plaintiff testified that he had been on food stamps for about three years and also received general assistance (Tr. 27).

Plaintiff's last job was as a bus boy at a restaurant (Tr. 27-28). Although he testified that this job was in 2000 or 2002 and that he didn't work after this job, his earnings report indicates earnings only in 2005 for $261.42 (Tr. 27, 114). He testified that he was laid off from this job because "they felt I wasn't adequate with my progress, and I had to be told to follow tasks periodically" (Tr. 28).

He testified that he believed that he had back problems, as well as leg problems, although he was not receiving any treatment for these problems (Tr. 29-31). He did not ever have any physical therapy for his back or injections (Tr. 37). He also testified that he

had borderline intellectual functioning and had been treated for anxiety or depression (Tr. 34).

## PROCEDURAL HISTORY

Plaintiff filed an application for Supplemental Security Income benefits on February 6, 2007 alleging disability onset in July, 1985 (see Tr. 9, 111-13). His application was denied initially and following reconsideration (Tr. 69-72, 74-76). Plaintiff's requested hearing was held before Administrative Law Judge Gary J. Suttles ("the ALJ") on October 7, 2009 (Tr. 22-66). On October 27, 2009, the ALJ issued a written decision in which he found that plaintiff was not disabled pursuant to the Social Security Act (Tr. 6-21).

On October 7, 2010, the Appeals Council denied plaintiff's request for review, making the written decision by the ALJ the final agency decision subject to judicial review (Tr. 1-4). See 20 C.F.R. § 404.981. In December, 2010, plaintiff filed a complaint in this Court seeking judicial review of the ALJ's written decision (see ECF Nos. 1, 4). On April 6, 2011, defendant filed the sealed administrative record in this matter ("Tr.") (see ECF No. 10). In his Opening Brief, plaintiff questions the ALJ's review of: (1) the medical evidence; (2) the lay evidence; and, (3) plaintiff's credibility (see ECF No. 15, p. 14). He also contends that the residual functional analysis and step five decision were not proper (id.).

## STANDARD OF REVIEW

Plaintiff bears the burden of proving disability within the meaning of the Social Security Act (hereinafter "the Act"). Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir.

1999); see also Johnson v. Shalala, 60 F.3d 1428, 1432 (9th Cir. 1995). The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment "which can be expected to result in death or which has lasted, or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Plaintiff is disabled under the Act only if plaintiff's impairments are of such severity that plaintiff is unable to do previous work, and cannot, considering the plaintiff's age, education, and work experience, engage in any other substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); see also Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. Bayliss v. Barnhart, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (citing Tidwell v. Apfel, 161 F.3d 599, 601 (9th Cir. 1999)). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such "'relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir. 1989) (quoting Davis v. Heckler, 868 F.2d 323, 325-26 (9th Cir. 1989)); see also Richardson v. Perales, 402 U.S. 389, 401 (1971). Regarding the question of whether or not substantial evidence supports the findings by the ALJ, the Court should "'review the administrative record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusion.'" Sandgathe v. Chater, 108 F.3d 978, 980 (1996) (per curiam) (quoting Andrews, supra, 53 F.3d at 1039). In addition, the Court "'must independently determine

whether the Commissioner's decision is (1) free of legal error and (2) is supported by substantial evidence.'" See Bruce v. Astrue, 557 F.3d 1113, 1115 (9th Cir. 2006) (*citing* Moore v. Comm'r of the Soc. Sec. Admin., 278 F.3d 920, 924 (9th Cir. 2002)); Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996).

According to the Ninth Circuit, "[l]ong-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and actual findings offered by the ALJ - - not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking." Bray v. Comm'r of SSA, 554 F.3d 1219, 1226-27 (9th Cir. 2009) (*citing* SEC v. Chenery Corp., 332 U.S. 194, 196 (1947) (other citation omitted)); see also Stout v. Commissioner of Soc. Sec., 454 F.3d 1050, 1054 (9th Cir. 2006) ("we cannot affirm the decision of an agency on a ground that the agency did not invoke in making its decision") (citations omitted). For example, "the ALJ, not the district court, is required to provide specific reasons for rejecting lay testimony." Stout, supra, 454 F.3d at 1054 (*citing* Dodrill v. Shalala, 12 F.3d 915, 919 (9th Cir. 1993)). In the context of social security appeals, legal errors committed by the ALJ may be considered harmless where the error is irrelevant to the ultimate disability conclusion. Stout, supra, 454 F.3d at 1054-55 (reviewing legal errors found to be harmless).

<u>DISCUSSION</u>

1.  The ALJ erred in his review of the medical evidence.

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician or psychologist. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996) (*citing* Baxter v. Sullivan, 923 F.2d

1391, 1396 (9th Cir. 1991); <u>Pitzer v. Sullivan</u>, 908 F.2d 502, 506 (9th Cir. 1990)). Even if a treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." <u>Lester</u>, <u>supra</u>, 81 F.3d at 830-31 (*citing* <u>Andrews v. Shalala</u>, 53 F.3d 1035, 1043 (9th Cir. 1995)). The ALJ can accomplish this by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." <u>Reddick</u>, <u>supra</u>, 157 F.3d at 725 (*citing* <u>Magallanes v. Bowen</u>, 881 F.2d 747, 751 (9th Cir. 1989)).

In addition, the ALJ must explain why his own interpretations, rather than those of the doctors, are correct. <u>Reddick</u>, <u>supra</u>, 157 F.3d at 725 (*citing* <u>Embrey v. Bowen</u>, 849 F.2d 418, 421-22 (9th Cir. 1988)). However, the ALJ "need not discuss *all* evidence presented." <u>Vincent on Behalf of Vincent v. Heckler</u>, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (per curiam). The ALJ must only explain why "significant probative evidence has been rejected." <u>Id</u>. (*quoting* <u>Cotter v. Harris</u>, 642 F.2d 700, 706-07 (3d Cir. 1981)).

An examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician." <u>Lester</u>, <u>supra</u>, 81 F.3d at 830 (citations omitted); <u>see also</u> 20 C.F.R. § 404.1527(d). The ALJ "may reject the opinion of a non-examining physician by reference to specific evidence in the medical record." <u>Sousa v. Callahan</u>, 143 F.3d 1240, 1244 (9th Cir. 1998) (*citing* <u>Gomez v. Chater</u>, 74 F.3d 967, 972 (9th Cir. 1996); <u>Andrews, supra</u>, 53 F.3d at 1041).

According to Social Security Ruling ("SSR") 96-8p, a residual functional capacity assessment by the ALJ "must always consider and address medical source opinions. If the

RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." SSR 96-8p, 1996 SSR LEXIS 5 at *20.

a. Dr. Kimberly Wheeler, Ph.D. ("Dr. Wheeler") and Dr. Keith Krueger, Ph.D. ("Dr. Krueger"), examining psychologists

Dr. Krueger examined plaintiff on January 23, 2008 (Tr. 428-31). Dr. Krueger indicated that plaintiff had moderately severe physical complaints and diagnosed borderline intellectual functioning (Tr. 429). He indicated that plaintiff suffered from mild limitations in a number of cognitive and social abilities and suffered from moderate limitations in his ability to respond appropriately to and tolerate the pressures and expectations of a normal work setting (Tr. 430). He opined that plaintiff's limitations were not due to a treatable mental health issue (Tr. 431)

Dr. Wheeler examined plaintiff on June 16, 2009 (Tr. 470-73). She diagnosed plaintiff with "dysthymia, early onset; borderline intellectual functioning; and, meth/mj [use] in reported remission (credibility?)" (Tr. 471). Dr. Wheeler assessed that plaintiff suffered from a moderate degree of limitation in a number of cognitive and social abilities, including the ability to relate appropriately to co-workers and supervisors and to respond appropriately to and tolerate the expectations of a normal work setting (Tr. 472). She opined that mental health intervention likely would restore or substantially improve plaintiff's ability to work as it would help with self-esteem (Tr. 473).

The ALJ included the following in his written decision:

The opinions of Dr. Wheeler and Dr. Krueger are given little weight because they are unsupported by objective clinical findings and are inconsistent with the evidence considered as a whole. Specifically, Dr.

Bremer's mental status examination of the claimant was largely intact. Dr. Bremer's mental status examination showed that the claimant arrived promptly for his appointment. He worked steadily and persistently, to the best of his ability (internal citation to Exhibit 11F, p. 1).

(Tr. 19).

Regarding the ALJ's finding that the opinion of Dr. Krueger was not based on objective evidence, the Court notes that Dr. Krueger indicated that he relied in part on plaintiff's test results on the WAIS-III (Wechsler Adult Intelligence Scale-3d edition) (see Tr. 428, 451). See also: 20 C.F.R. § 404.1513(b)(2). Similarly, Dr. Wheeler indicated her objective observation that plaintiff "really has a hard time grasping what I'm asking," when she asked him about his functional limitations (see Tr. 470). See also 20 C.F.R. § 404.1513(b)(2). Dr. Wheeler assessed that plaintiff's comprehension was "poor" (see Tr. 472). Therefore, both Drs. Wheeler and Krueger supported their opinions with objective clinical findings.

Regarding the ALJ's finding that the opinions of both Drs. Krueger and Wheeler were "inconsistent with the evidence considered as a whole," the Court finds that this reason is not specific (Tr. 19). See Lester, supra, 81 F.3d at 830-31. The ALJ cites findings by Dr. Jeff Bremer, Ph.D. ("Dr. Bremer") that do not contradict the functional limitations assessed by Drs. Wheeler and Krueger or their diagnoses. In addition, the implication that Dr. Bremer opined that plaintiff's mental status examination was "largely intact" fails to account for Dr. Bremer's diagnoses of mathematics disorder, disorder of written expression and borderline intellectual functioning (see Tr. 427). Although the ALJ cites other specific findings by Dr. Bremer, they do not appear to have any relevance

to plaintiff's functional limitations as assessed by Drs. Krueger and Wheeler, such as moderate limitation in his ability to respond appropriately to and tolerate the pressures and expectations of a normal work setting (see Tr. 19, 430, 472).

Because Dr. Bremer did not provide an opinion regarding plaintiff's specific functional abilities, he did not contradict the findings of specific functional limitations by Drs. Wheeler and Krueger (see Tr. 423-27). In addition, Dr. Bremer indicated that he agreed "with Dr. Krueger with regard to diagnoses and levels of resultant incapacity" (Tr. 427). Therefore, the ALJ's citation to Dr. Bremer's opinion does not provide much support for the ALJ's failure to credit fully Dr. Krueger's opinions regarding plaintiff's functional limitations. In addition, even if the opinions of Drs. Krueger and Wheeler were contradicted by Dr. Bremer's opinions, the ALJ still was required to provide specific and legitimate reasons for rejecting the opinions of Drs. Krueger and Wheeler, which the ALJ failed to do. See Lester, supra, 81 F.3d at 830-31. Such reasons were not provided here.

b.  Dr. Sean Mee, Ph.D. ("Dr. Mee"), medical consultant

Although the ALJ discussed the psychiatric review technique filled out by Dr. Mee (see Tr. 19; see also "Exhibit 6F," i.e., Tr. 385-98), he failed to mention the mental residual functional assessment provided by Dr. Mee (see Tr. 399-402). In his mental residual functional assessment, Dr. Mee opined that plaintiff was moderately limited in his ability to complete a normal work day and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods (Tr. 400). In the narrative portion of the report, Dr. Mee opined that although plaintiff could be productive, he might work at a

slow pace "episodically" (Tr. 401). Dr. Mee's specific opinions regarding plaintiff's functional limitations are significant probative evidence that the ALJ should have discussed explicitly. See Vincent, supra, 739 F.2d at 1394-95.

In his residual functional capacity ("RFC") determination, the ALJ found that plaintiff could adapt to changes in the workplace (Tr. 13), however, Dr. Mee opined that plaintiff was moderately limited in his ability to respond appropriately to changes in the work setting (see Tr. 400). Although defendant argues that the narrative portion of a doctor's assessment is most relevant, the ALJ here failed to mention the narrative portion of Dr. Mee's mental residual functional capacity assessment, indicating no awareness of its existence in the record, and, the narrative portion of Dr. Mee's assessment does not address plaintiff's ability to respond appropriately to changes in the work setting (see Tr. 401). See also Bray, supra, 554 F.3d at 1226-27 ("[l]ong-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and actual findings offered by the ALJ").

If a RFC assessment "conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." SSR 96-8p, 1996 SSR LEXIS 5 at *20. The ALJ's failure to do so here was legal error. See id.; Vincent, supra, 739 F.2d at 1394-95.

For the reasons discussed and based on the relevant record, the Court concludes that the ALJ erred in his review of Dr. Mee's opinions. See id.

c.   Medical Consultant, Ms. Kathleen Backous ("Ms. Backous")

Defendant admits that the ALJ erroneously referred to medical consultant Ms. Backous as Dr. Backous and erroneously asserted that she had a M.D. (see Response, ECF No. 20, p. 15). Her opinion should be evaluated anew following remand.

2.   The ALJ erred in his review of the lay evidence.

Pursuant to the relevant federal regulations, in addition to "acceptable medical sources," that is, sources "who can provide evidence to establish an impairment," see 20 C.F.R. § 404.1513 (a), there are "other sources," such as friends and family members, who are defined as "other non-medical sources," see 20 C.F.R. § 404.1513 (d)(4), and "other sources" such as nurse practitioners and naturopaths, who are considered other medical sources, see 20 C.F.R. § 404.1513 (d)(1). See also Turner v. Comm'r of Soc. Sec., 613 F.3d 1217, 1223-24 (9th Cir. 2010) (citing 20 C.F.R. § 404.1513(a), (d), (d)(3)). An ALJ may disregard opinion evidence provided by "other sources," characterized by the Ninth Circuit as lay testimony, "if the ALJ 'gives reasons germane to each witness for doing so." Turner, supra, 613 F.3d at 1224 (citing Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001)); see also Van Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir. 1996). This is because "[i]n determining whether a claimant is disabled, an ALJ must consider lay witness testimony concerning a claimant's ability to work." Stout v. Commissioner, Social Security Administration, 454 F.3d 1050, 1053 (9th Cir. 2006) (citing Dodrill v. Shalala, 12 F.3d 915, 919 (9th Cir. 1993)).

Recently, the Ninth Circuit characterized lay witness testimony as "competent evidence," again concluding that in order for such evidence to be disregarded, "the ALJ must provide 'reasons that are germane to each witness.'" Bruce v. Astrue, 557 F.3d 1113, 1115 (9th Cir. 2009) (*quoting* Van Nguyen, supra, 100 F.3d at 1467). Testimony from "other non-medical sources," such as friends and family members, see 20 C.F.R. § 404.1513 (d)(4), may not be disregarded simply because of their relationship to the claimant or because of any potential financial interest in the claimant's disability benefits. Valentine v. Comm'r SSA, 574 F.3d 685, 694 (9th Cir. 2009). In addition, "where the ALJ's error lies in a failure to properly discuss competent lay testimony favorable to the claimant, a reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." Stout, supra, 454 F.3d at 1056 (reviewing cases).

a. Mr. Mike Myers, PA-C ("PA-C Myers")

The ALJ discredited the opinion by certified physician assistant, PA-C Myers because of the finding that plaintiff "recovered from his knee surgery without significant limitations" (Tr. 17). However, the ALJ made this finding without discussing the evidence of plaintiff's June 11, 2008 MRI results of a small disc protrusion L5-S1 (see Tr. 443; see also Tr. 445)).

It was error for the ALJ to fail to discuss the significant probative evidence of plaintiff's MRI results before relying on a finding that plaintiff experienced improvement and "recovered from his knee surgery without significant limitations"(Tr. 17; see also Tr. 15). See Vincent, supra, 739 F.2d at 1394-95. Although PA-C Myers is not an acceptable

medical source, the MRI results were interpreted by Dr. Lawrence N. Bennett, M.D., and PA-C Myers was a treating other medical source (see Tr. 443).

    b.  Mr. David Lindseth, B.A. ("Mr. Lindseth"), mental health therapist

On December 31, 2006, Mr. Lindseth examined plaintiff and conducted a mental status examination (Tr. 325-32). He opined that plaintiff's Global Assessment of Functioning ("GAF") was 45 and indicated his assessment of dysthymic disorder and borderline intellectual functioning (Tr. 331). He observed that plaintiff had retarded psychomotor activity, constricted affect, poor judgment, poor recent memory, poor remote memory and poor concentration (Tr. 326).

Mr. Lindseth's opinion is significant probative evidence that the ALJ should have discussed. See Vincent, supra, 739 F.2d at 1394-95. In addition, lay evidence should be considered by the ALJ and here, the ALJ failed to provide germane reasons for failing to credit fully Mr. Lindseth's opinions regarding plaintiff's judgment, memory and concentration abilities. See Turner, supra, 613 F.3d at 1224. Because this Court cannot conclude with confidence that "no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination," the Court cannot consider the ALJ's error in failing to review Mr. Lindseth's opinion to be harmless. See Stout, supra, 454 F.3d at 1056.

    c.  Plaintiff's mother, Ms. Julie L. Johnson ("Ms. Johnson")

Ms. Johnson, plaintiff's mother, provided a lay statement regarding plaintiff (see Tr. 127-35). She indicated that plaintiff used to have a dishwashing job, but that he "couldn't do the work cus of his knee and not able to keep up the pace with others" (Tr.

128). She indicated that plaintiff required reminders about daily care and chores (Tr. 129). Ms. Johnson indicated that plaintiff could pay bills, but she was not sure if he could count change (Tr. 130). She also stated that plaintiff regularly used the computer but that it bothered him to sit (Tr. 131). Ms. Johnson indicated that plaintiff's conditions resulted in limitations in plaintiff's lifting, bending, squatting, standing, reaching, walking, sitting, kneeling, concentration, completing tasks and understanding (Tr. 132). She further indicated that plaintiff was emotional and used a cane often after his knee surgery (Tr. 133). She indicated that plaintiff did not know how to communicate well (Tr. 134).

The ALJ mentioned Ms. Johnson's statement, but gave no reason to reject any of her opinions, including her opinion regarding plaintiff's multiple areas of functional limitation and his inability to keep his dishwashing job in part due to his problems with pace (Tr. 128, 132).

Because this Court cannot conclude with confidence that "no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination," the Court cannot consider the ALJ's error in failing to give any germane reason to discount Ms. Johnson's opinion to be harmless. See Stout, supra, 454 F.3d at 1056. The lay statement of Ms. Johnson should be evaluated further following remand of this matter. See id.

3. The ALJ should assess anew plaintiff's credibility following remand.

The ALJ relies in part from a lack of support from the objective medical evidence to fail to credit fully plaintiff's credibility (see Tr. 14). In addition, a determination of plaintiff's credibility relies on the assessment of the medical evidence. See 20 C.F.R. §

404.1529(c). However, the Court already has determined that the ALJ failed to evaluate properly the medical and other evidence, see supra, sections 1 and 2.

In addition, the ALJ erred in his consideration of plaintiff's activities of daily living (see Tr. 16). Regarding activities of daily living, the Ninth Circuit "has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities . . . . does not in any way detract from h[is] credibility as to h[is] overall disability." Orn v. Astrue, 495 F.3d 625, 639 (9th Cir. 2007 (quoting Vertigan v. Halter, 260 F.3d 1044, 1050 (9th Cir. 2001)). The Ninth Circuit specified "the two grounds for using daily activities to form the basis of an adverse credibility determination:" (1) whether or not they contradict the claimant's other testimony and (2) whether or not the activities of daily living meet "the threshold for transferable work skills." Orn, supra, 495 F.3d at 639 (citing Fair, supra, 885 F.2d at 603). As stated by the Ninth Circuit, the ALJ "must make 'specific findings relating to the daily activities' and their transferability to conclude that a claimant's daily activities warrant an adverse credibility determination. Orn, supra, 495 F.3d at 639 (quoting Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005)).

Here, the ALJ did not make a specific finding that plaintiff's activities of daily living were transferable to a work setting (see Tr. 16). In addition, the ALJ did not find that plaintiff's daily activities contradicted any of his specific testimony (see id.). However, the ALJ found that plaintiff's daily activities, specifically his watching television; walking in the yard; fixing something to eat; doing household chores, such as laundry, taking out the trash and shopping for food; operating a computer; playing pool; reading the newspaper; going to the movies; and, going out to eat, were greater than

plaintiff's "alleged functional limitations" (id.). The ALJ failed to specify which of plaintiff's alleged functional limitations was contradicted by which of plaintiff's specified daily activities, committing legal error (id.). See also Orn, supra, 495 F.3d at 639. The ALJ did not substantiate his reliance on plaintiff's daily activities for his adverse credibility finding. See Orn, supra, 495 F.3d at 639.

For the reasons discussed and based on the relevant record, the Court concludes that plaintiff's credibility should be evaluated anew following remand of this matter.

4. Plaintiff's residual functional capacity should be reassessed following remand of this matter.

The Court already has determined that the ALJ failed to evaluate properly the medical evidence, see supra, section 1, and other evidence, see supra, section 2. For example, the ALJ found that plaintiff experienced recovery from his knee surgery without significant limitations, but failed to evaluate plaintiff's recent MRI results and failed to credit fully the limitation to sedentary work by PA-C Myers based in part on plaintiff's recent MRI results (see Tr. 15, 17).

Because the ALJ failed to evaluate properly the medical evidence from acceptable medical sources as well as other medical evidence, plaintiff's residual functional capacity should be assessed anew following remand of this matter. It is for the ALJ to determine whether or not plaintiff is capable of work given his properly determined functional impairments and residual functional capacity.

## CONCLUSION

The ALJ erred in his evaluation of the medical and other evidence, in part, by failing to discuss significant probative evidence. The ALJ also erred in his evaluation of the lay evidence and plaintiff's credibility.

Based on these reasons and the relevant record, the undersigned recommends that this matter be **REVERSED** and **REMANDED** to the administration for further consideration pursuant to sentence four of 42 U.S.C. § 405(g). **JUDGMENT** should be for **PLAINTIFF** and the case should be closed.

Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days from service of this Report to file written objections. See also Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of de novo review by the district judge. See 28 U.S.C. § 636(b)(1)(C). Accommodating the time limit imposed by Rule 72(b), the clerk is directed to set the matter for consideration on February 17**,** 2012, as noted in the caption.

Dated this 24th day of January, 2012.


J. Richard Creatura
United States Magistrate Judge